```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/18/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
LASHIFY, INC.,                                                     :
:
Plaintiff,                                  :
:                   25-cv-4183 (LJL)
-v-                                            :
:                   MEMORANDUM AND
QINGDAO NETWORK TECHNOLOGY CO., LTD.       :                        ORDER
a/k/a QINGDAO FOLLOW THE TREND             :
NETWORK TECHNOLOGY CO., LTD. a/k/a         :
QINGDAO MARS CULTURE MEDIA CO., LTD        :
d/b/a UCOOLME and VIVICUTE LIMITED,        :
:
Defendants.                                  :
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Lashify, Inc. ("Plaintiff" or "Lashify") moves, pursuant to Federal Rule of Civil Procedure 65(d)(2) and Local Civil Rule 55.2(b) for an order directing Defendants Qingdao Network Technology Co., Ltd, a/k/a Qingdao Follow the Trend Network Technology Co., Ltd., a/k/a Qingdao Mars Culture Media Co., Ltd. d/b/a UCoolMe ("QNT") and Vivicute Limited ("Vivicute," and collectively with QNT, "Defendants") to: (1) fully comply with the temporary restraining order ("TRO") and preliminary injunction order ("PI Order") entered in this case; (2) pay sanctions for their violations of the TRO and the PI Order; and (3) post a bond to satisfy the amount in controversy in this action. Dkt. No. 59. Plaintiff supports its motion with a memorandum of law and the declaration of Jodi-Ann McLane ("McLane"). Dkt. Nos. 60–61. On September 5, 2025, Defendants filed a memorandum of law in opposition to the motion. Dkt. No. 63. Defendants filed supplemental materials on September 12, 2025. Dkt. No. 69. On September 23, 2025, Plaintiff filed a reply memorandum of law in further support of its motion for contempt. Dkt. No. 77. The Court held a hearing on the contempt motion on October 23,

2025. Minute Entry for Oct. 23, 2025. The Court held argument on the motion on November 10, 2025. For the following reasons, the motion is denied.

## BACKGROUND

Familiarity with the prior proceedings is presumed.

Plaintiff is a Delaware corporation with its principal place of business in North Hollywood, California. Dkt. No. 9 ¶ 5. It was founded by Shara Lotti ("Lotti"). *Id.* ¶ 8. Lotti is identified as the inventor and Lashify as the applicant and assignee of Patent No. US 11,253,020 (the "020 Patent") filed on June 8, 2021 for Artificial Lash Extensions. Dkt. No. 9-1. Lotti is also identified as the inventor and Lashify as the applicant and assignee for Patent No. US 12,171,290 (the "290 Patent," and with the '020 Patent, the "Lashify Patents") filed on May 18, 2023 for Artificial Lash Extensions. Dkt. No. 9-2. The Lashify Patents claim an artificial lash extension system that is designed to attach to the underside of a user's natural lashes. Dkt. No. 19 ¶ 13. The Lashify System, as well as all Lashify products, are sold direct to consumers through Lashify's website and its own brick and mortar store in Los Angeles, California, and are advertised for sale through Lashify's social media accounts. *Id.* ¶ 9.

On June 24, 2025, the Court issued a preliminary injunction order. Dkt. No. 40. The Court restrained and enjoined "Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation" with them from, *inter alia*, "manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, making, using, offering for sale, selling and/or otherwise dealing in Infringing Products, or any other product that utilize the technology of one or more claims in the Lashify Patents." *Id.* ¶ 1(a)(i). The Infringing Products are defined as "Lash clusters and kits that include lash extensions designed to be applied to the underside of natural lashes that infringe one or more claims of the Lashify Patents." *Id.* at ii. The Court also enjoined Defendants and those acting in active concert and

participation with them from "directly or indirectly infringing in any manner Plaintiff's Lashify Patents" and "making, using, selling, importing and/or offering to sell products that infringe the Lashify Patents." *Id.* ¶ 1(a)(iii), (iv).  The PI Order required Defendants and all persons in active concert and participation with them to cease sales of Infringing Products in all channels of trade, including through Defendants' website, identified in the PI Order as https;//ucoolmelashes.com ("Defendants' Website").[1]  *Id.* ¶ 1(a)(ii); *see also id.* at ii.

The Court based that injunction on its findings of fact and conclusions of law that it delivered orally on June 23, 2025.  The Court found that Plaintiff had shown a likelihood of success on the merits as well as a likelihood of irreparable injury in the absence of preliminary injunctive relief.  Dkt. No. 56 at 5:24–10:17.

## DISCUSSION

"A court has the inherent power to hold a party in civil contempt in order 'to enforce compliance with an order of the court or to compensate for losses or damages.'"  *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) (quoting *McComb v. Jack. Paper Co.*, 336 U.S. 187, 191 (1949)).  "[I]n order to hold the alleged contemnor in contempt, the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that that order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order."  *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995).  It need not be established that the violation was willful.  *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645,

---

[1] In Plaintiff's initial complaint and the PI Order, "ucoolmelashes.com" is defined as Defendants' website.  Dkt. Nos. 9, 40.  Plaintiff moved for contempt against both Defendants following identification of websites that they allege are selling infringing products in violation of the PI Order and are affiliated with Defendants.  Dkt. No. 61 at 3–4.  Plaintiff does not make specific allegations regarding Vivicute, but in its Amended Complaint, alleges that Defendants are "related and/or affiliated individuals or companies."  Dkt. No. 9 at 3.

3

655 (2d Cir. 2004) (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)).

The Federal Rules of Evidence apply in "contempt proceedings, except those in which the court may act summarily." Fed. R. Evid. 1101(b); *see Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 5067500, at *9 (S.D.N.Y. Sept. 27, 2017) ("Evidence that would not be admissible under established federal rules regarding the competency of evidence at trial may not be considered on a motion for contempt." (quoting *Ceslik v. Miller Ford, Inc.*, 2006 WL 1582215, at *1 (D. Conn. June 5, 2006)).

Plaintiff argues that Defendants have violated the PI Order by selling and offering for sale Infringing Products through alternate merchant storefronts on TikTok and, more recently, through newly discovered websites, www.ucoolme.com (the "UCoolMe Website") and https://airycute.com (the "AiryCute Website"). Dkt. No. 61 at 1–2. In particular, on August 5, 2025, less than two months after the PI Order was entered, Plaintiff's law firm Epstein Drangel purchased an Infringing Product from the UCoolMe Website. Dkt. No. 60 ¶ 9. On August 7, 2025, Epstein Drangel purchased an Infringing Product branded as AIRYCUTE from the AiryCute Website. *Id.* ¶ 11. Plaintiff also attests that Infringing Products branded as AiryCute are being offered for sale through TikTok Shop under the shop name AiryCute Beauty. *Id.* ¶ 11. Defendants do not dispute that the products Epstein Drangel purchased from the UCoolMe Website and the AiryCute Website infringe Plaintiff's Lashify Patents. Defendants argue, however, that they did not sell the products offered through the UCoolMe and AiryCute Websites. They argue that the products were "sold or resold by unauthorized users of the UCoolMe mark as part of third-party infringement of Defendants." Dkt. No. 63 at 3. They argue that "Defendants are at the center of numerous disputes with online imposters calling themselves 'uCoolMe' without authorization or license from Defendant." *Id.* at 2.

Plaintiff has not proved by clear and convincing evidence that Defendants violated the PI Order. Vicky Xie ("Xie"), Operations Specialist of Qingdau Network Technology Co., Ltd., affirmed unambiguously that Defendants' official website is "Ucoolmelashes.com" and not "ucoolme.com." Dkt. No. 69-1 ¶¶ 1, 7. Xie testified that QNT has never authorized any other websites, Transcript of October 23, 2025 Hearing ("Tr.") at 86:14–15, that the products sold through the UCoolMe Website are not QNT's products, Tr. 89:5–7, that QNT has never authorized any other companies or website to sell their products, Tr. 90:6–7, that QNT has never authorized a third party to sell their products, Tr. 98:4–5, that there are many other "copycats" of QNT's products, Tr. 74:12–13, 77:23–24, 85:23–24, 91:6, 97:15–16, that QNT has served a Digital Millennium Copyright Act (DMCA) takedown notice for at least one of those products, Tr. 77:12–13, and that there are more copycats than QNT are able to deal with, Tr. 86:3–4.

Plaintiff's arguments that the products sold through the UCoolMe Website were sold by Defendants or those in active concert or participation with them are based on circumstantial evidence: (1) Plaintiff's law firm Epstein Drangel received a PayPal receipt with its purchase which identified that payment was made to an entity whose Chinese characters translate to Qingdao Mars Culture Medo Co., Ltd. ("QMC"), which is a "doing business as" or "d/b/a" for one of the enjoined Defendants in this case, Dkt. No. 60 ¶ 9; (2) the Infringing Products purchased by Epstein Drangel through the UCoolMe Website are identical to the Infringing Products and have nearly identical packages to the products purchased on a test basis through Defendants' Website at the beginning of the case, *id.* ¶ 19; (3) the product purchased from the UCoolMe Website includes a "CONTACT US" card directing purchasers to Defendants' Website, Dkt. No. 60-1 at 8; (4) the user manual included in the product package from the UCoolMe Website includes a user manual that references Defendants' Website, Dkt. No. 60

5

¶ 19; (5) the Infringing Products purchased by Epstein Drangel through the UCoolMe Website were shipped from the same location as the Infringing Products purchased through Defendants' Website prior to filing the action, *id.* ¶ 20; and (6) the "How To" Section of the UCoolMe Website under "Removal Instructions" references "UCoolMe," just as Defendants' Website does, *id.* ¶ 21.

Plaintiff ties the AiryCute Website to Defendants as follows: (1) the Infringing Products purchased through the AiryCute Website were shipped from the same location as the Infringing Products purchased from Defendants' Website and from the UCoolMe Website, *id.* ¶ 20; (2) the "How To" Section of the AiryCute Website also references UCoolMe, *id.* ¶ 21; (3) the PayPal receipt received by Epstein Drangel identified the payment recipient as an entity which translates to Qingdao Quingqingmei Trading Co., Ltd. ("QQT") which, according to corporate background searches conducted by Epstein Drangel's Beijing Office, shares a telephone number and email address with QMC and Qingdao Network Technology Co., Ltd., Defendant QNT in this case, which owns the UCoolMe trademark, *id.* ¶¶ 13–14, 16; and (4) the owner of the AiryCute trademark, according to the records of the U.S. Patent and Trademark Office, is an entity called Qingdao Boomstar Culture Media Co., Ltd. ("QBC") which, according to those same corporate records, is the same as QMC—the "a/k/a" for one of the Defendants in this case, *id.* ¶¶ 12, 14. In essence, according to Plaintiff, QQT is the same as QBC which is the same as QMC, an "a/k/a" of Defendant QNT.

Plaintiff's evidence is unable to overcome Ms. Xie's testimony. In the first place, Defendants raise well-founded evidentiary objections to much of Plaintiff's evidence. Although Plaintiff's PayPal receipts for the purchases that it made from the UCoolMe Website and the AiryCute Website have been properly authenticated and are not hearsay, Plaintiff has failed to

offer competent evidence of the translation of the Chinese characters on the receipts. As proof that the payments for the purchase from the UCoolMe Website was made to QMC and that the payment for the purchase from the AiryCute Website was made to QQT, Plaintiff offers that the translations were made by Google Translate and were corroborated by lawyers in Epstein Drangel's Beijing office. A translation by Google Translate, however, is not a substitute for a certified translation. *See* Fed. R. Evid. 604; *Khotovitskaya v. Shimunov*, 723 F. Supp. 3d 235, 242 (E.D.N.Y. 2024) ("It is a well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation." (quoting *Heredia v. Americare, Inc.*, 2020 WL 3961618, at *5 (S.D.N.Y. July 13, 2020))); *see also Maslic v. ISM Vuzem d.o.o.*, 2024 WL 3408217, at *7 (N.D. Cal. July 11, 2024) ("Translations done using Google Translate are not admissible in federal court . . . ."); *D.O.N.C. v. BPH Mich. Grp., LLC*, 2021 WL 5103918, at *1 (E.D. Mich. Sept. 20, 2021) (document translated by Google Translate is inadmissible); *Novelty Textile, Inc. v. Windsor Fashions, Inc.*, 2013 WL 1164065, at *3 (C.D. Cal. Mar. 20, 2013) (same). McLane's testimony that she was told that the translations were accurate, moreover, is pure hearsay. Plaintiff offered no testimony from the Chinese lawyers themselves that they were qualified to translate the Chinese characters and that their translation was true. Fed. R. Evid. 604; *cf. Romero v. RBS Constr. Corp.*, 2022 WL 522989, at *8 (D.D.C. Feb. 22, 2022) (affidavit translated through Google Translate should not be struck from the record where competent translator affirmed that the translation was accurate).

The corporate records, likewise, are also hearsay. Plaintiff relies on McLane's testimony that the corporate search records were those that were discovered by Epstein Drangel's Beijing Office when it conducted background searches for all four identified Chinese entities. Dkt. No. 60 ¶ 14. Plaintiff argues that the records are not hearsay because it is not relying on the truth of

7

the matter asserted in them. For example, it is irrelevant whether the telephone numbers and email addresses for the four entities are the actual telephone numbers and addresses for those entities. What matters, according to Plaintiff, is that the same information is reported for the four entities regardless of whether that information is accurate. But that does not solve the hearsay problem. The hearsay problem is that McLane is reporting what she was told by the lawyers in Beijing—that they conducted corporate background searches and that the records she was given by them and that Plaintiff has offered into evidence were actually the records they obtained from those searches.[2] McLane herself is not a percipient witness as to the work done by the Beijing lawyers. Her testimony—offered for the truth of the matter asserted—is hearsay and thus not a competent basis for a contempt finding.

Without competent evidence of the names of the Chinese entities or their relationship to one another and to the Defendants in this case, Plaintiff is left with the facts that the products purchased by Epstein Drangel from the UCoolMe and AiryCute Websites resemble those purchased from Defendants' Website, that the products were shipped from the same warehouse, that the product from the UCoolMe Website directed purchasers to Defendants' Website, and

---

[2] Perhaps recognizing the evidentiary defects in its showing, Plaintiff now offers what it claims are official copies of the records from the Chinese government database and attempts to rely upon the residual exception to the hearsay rule outlined in Federal Rule of Evidence 807. Dkt. No. 105. But the Court closed the hearing on the contempt motion on October 23, 2025, and the residual exception is unavailable because Plaintiff has neither provided notice nor shown that the records it submitted and the McLane testimony regarding those records are "more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2), (b); *see Great Lakes Reinsurance (UK) SE v. Herzig*, 673 F. Supp. 3d 432, 457 (S.D.N.Y. 2023) (finding declaration to not be the most probative evidence regarding negotiations where written communications exist memorializing conversations and where the "alleged highly relevant information . . . was available to Herzig from the outset of this case"); *United States v. Kandic*, 134 F.4th 92, 103 (2d Cir. 2025) (noting that the residual exception "is a catch-all to be invoked 'very rarely, and only in exceptional circumstances'" (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991))).

8

that, while QNT served takedown notices for some of the allegedly infringing products, it did not do so for the products on the UCoolMe Website.

Plaintiff's evidence is too thin a basis for the Court to find Defendants in contempt. To find a party in contempt, it is not sufficient that the Court determine that it is more likely than not that the party has violated a court order. The Court must find "clear and convincing" evidence. *See Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) ("[T]he clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." (internal quotations omitted)); *see also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010) ("[A] contempt order is, we have recognized, a 'potent weapon, to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995))).

Plaintiff has not offered such evidence. The evidence that the products purchased from the UCoolMe and AiryCute Websites resembled that from Defendants' Website does not itself demonstrate that Defendants themselves sold the products purchased through the UCoolMe and AiryCute Websites or that they are in contempt of the PI Order. It is consistent with Xie's testimony that there are copycats of Defendants' products as well as of Plaintiff's products. For similar reasons, the fact that QNT may have served takedown notices and taken steps to prevent others from selling the same products Defendants were selling but had not—at least by the time of the contempt hearing—done so with respect to UCoolMe Website, is not sufficient to show that Defendants own the UCoolMe Website. Defendants are enjoined from selling their products into the United States. That they had not taken steps to prevent others from selling those products does not show that the products emanated from Defendants. Finally, while the evidence

9

that the products were shipped from the same warehouse and that the UCoolMe Website package directed purchasers to Defendants' Website is supportive of Plaintiff's theory, that evidence, too, has its holes, including that Plaintiff offered no evidence about the warehouse and whether it services several different manufacturers.

## CONCLUSION

Accordingly, the motion for contempt is DENIED without prejudice.

The Clerk of Court is respectfully directed to close Dkt. No. 59.

SO ORDERED.

Dated: November 18, 2025
      New York, New York

                                         LEWIS J. LIMAN
                                  United States District Judge