UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                    :

LASHIFY, INC.,                         :

                                     :

                 Plaintiff,      :

                                     :        25-cv-4183 (LJL)

       -v-                  :

                                     :     OPINION AND ORDER

QINGDAO NETWORK TECHNOLOGY CO., LTD.  :
a/k/a QINGDAO FOLLOW THE TREND        :
NETWORK TECHNOLOGY CO., LTD. a/k/a     :
QINGDAO MARS CULTURE MEDIA CO., LTD  :
d/b/a UCOOLME and VIVICUTE LIMITED,    :

                                   :

                 Defendants.    :

                                   :

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/15/2026

LEWIS J. LIMAN, United States District Judge:

Defendants Qingdao Network Technology Co., Ltd, a/k/a Qingdao Follow the Trend

Network Technology Co., Ltd., a/k/a Qingdao Mars Culture Media Co., Ltd. d/b/a UCoolMe

("QNT") and Vivicute Limited ("Vivicute," and collectively with QNT, "Defendants") move,

pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 55.2(b) for an order

vacating the Preliminary Injunction entered by this Court on June 24, 2025. Dkt. No. 64.

## BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business in North

Hollywood, California. Dkt. No. 9 ¶ 5. It was founded by Sahara Lotti ("Lotti"). *Id.* ¶ 8. Lotti

is identified as the inventor and Lashify as the applicant and assignee of Patent No. US

11,253,020 (the "'020 Patent") filed on June 8, 2021 for Artificial Lash Extensions. Dkt. No.

9-1. Lotti is also identified as the inventor and Lashify as the applicant and assignee for Patent

No. US 12,171,290 (the "'290 Patent," and with the '020 Patent, the "Lashify Utility Patents")

filed on May 18, 2023 for Artificial Lash Extensions. Dkt. No. 9-2. The Lashify Utility Patents

claim an artificial lash extension system that is designed to attach to the underside of a user's natural lashes.  Dkt. No. 19 ¶ 13.  Lashify also holds two design patents (with the Lashify Utility Patents, the "Lashify Patents") with respect to its Gossamer Lashes.  Dkt. No. 9 ¶ 17.  The Lashify System, as well as all Lashify products, are sold direct to consumers through Lashify's website and its own brick and mortar store in Los Angeles, California, and are advertised for sale through Lashify's social media accounts.  Dkt. No. 19 ¶ 9.  The Lashify artificial lash system is intended to create salon quality lash extensions in record time and without going to the salon; the lashes can be administered by the user in the comfort of the user's home.  Dkt. No. 9 ¶ 8.

QNT and Vivicute are companies who sell products on AliExpress, Amazon, TikTok Shop, and Defendants' own website, among other e-commerce and social media platforms.  *Id.* ¶ 6.  Plaintiff alleges that Defendants sell products that infringe the Lashify Patents.  *See generally* Dkt. No. 9.

On June 24, 2025, on application of Plaintiff, the Court issued a preliminary injunction, restraining Defendants from infringing the Lashify Patents (the "Preliminary Injunction").  Dkt. No. 40.  Specifically, the Court restrained and enjoined "Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation" with them from, *inter alia*, "manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, making, using, offering for sale, selling and/or otherwise dealing in Infringing Products, or any other product that utilize the technology of one or more claims in the Lashify Patents."  *Id.* ¶ 1(a)(i).  The Infringing Products are defined as "Lash clusters and kits that include lash extensions designed to be applied to the underside of natural lashes that infringe one or more claims of the Lashify Patents."  *Id.* at ii.  The Court also enjoined Defendants and those acting in active concert and participation with them from "directly or indirectly infringing in any

manner Plaintiff's Lashify Patents" and "making, using, selling, importing and/or offering to sell products that infringe the Lashify Patents."  *Id.* ¶ 1(a)(iii), (iv).  The Preliminary Injunction required Defendants and all persons in active concert and participation with them to cease sales of Infringing Products in all channels of trade, including through Defendants' website, identified in the Preliminary Injunction as https://ucoolmelashes.com ("Defendants' Website").  *Id.* ¶ 1(a)(ii); *see also id.* at ii.

The Court issued the Preliminary Injunction after briefing by the parties and after a hearing.[1]  On June 13, 2025, Defendants filed a twenty-five-page brief in opposition to the application for a preliminary injunction.  Dkt. No. 26.  Defendants also filed a declaration with eleven exhibits containing examples of what was claimed to be prior art.  Dkt. No. 27.  The Court also received a reply memorandum of law in further support of the preliminary injunction on June 15, 2025, along with a declaration in further support of the motion.  Dkt. Nos. 28–29.[2]

The Court held a lengthy hearing on June 16, 2025, during which it heard argument from the parties.  June 16, 2025 Minute Entry; Dkt. No. 41.

The Court ruled from the bench on June 23, 2025.  In its June 23, 2025 ruling granting the preliminary injunction, the Court found that Plaintiff had shown a likelihood of success on its claim that Defendants infringed at least claims 1, 3, 5 and 6 of the '020 parent and claims 1, 7, 8, 15 and 17 of the '290 patent.  Dkt. No. 56 at 5:24–6:14.  The Court also rejected Defendants' arguments that the '020 and '290 patents were invalid as obvious or anticipated by prior art.  *Id.* at 6:15–10:7.  The Court also found that Plaintiff had shown a likelihood it would suffer

---

[1] The Court issued a temporary restraining order ("TRO") ex parte on May 20, 2025.  Dkt. No. 20.  The TRO is substantially identical to the Preliminary Injunction.

[2] The Court previously received a memorandum of law in support of the TRO and the application for a preliminary injunction along with the declarations of Melissa J. Levine and Lotti.  Dkt. Nos. 17–19.

irreparable harm in the absence of injunctive relief.  Plaintiff had "generated tremendous goodwill in the market,' which was likely to be eroded by sales by Defendants who were "direct competitors of Plaintiff in the same market." *Id.* at 10:20–11:6.  "In addition, Plaintiff ha[d] presented evidence of potential price erosion, potential damage to reputation, and loss of business opportunities in the absence of injunctive relief." *Id.* at 11:10–13.  The Court noted that Plaintiff's Chief Executive Officer, Lotti, had "provided sworn testimony that Defendants' infringement has resulted in lost profits and has damaged Lashify's reputation as an innovator, negatively affecting Lashify's relationships with its current and potential customers and eroding Lashify's market share." *Id.* at 12:6–11.

On September 5, 2025, Defendants filed this motion to vacate the preliminary injunction. Dkt. No. 64.  The motion is supported by a memorandum of law, the declaration of Jill Ann Kindall with supporting exhibits, and the declaration of Joseph Farco with supporting exhibits. Dkt. Nos. 65–67.  Defendants also submitted a proposed order granting the motion to vacate. Dkt. No. 68.  Plaintiff submitted a memorandum of law and the declaration of Lotti in opposition to the motion.  Dkt. Nos. 75–76.  Defendants submitted a reply memorandum of law in further support of their motion.  Dkt. No. 79.  The Court held oral argument on the motion on November 10, 2025.  Nov. 10, 2025 Minute Entry.

## DISCUSSION

Defendants argue that the preliminary injunction should be modified for the following reasons: (1) Plaintiff's showing of irreparable harm is undermined by evidence that Plaintiff's harm is self-inflicted by allegedly racist comments it made in marketing materials, its "corporate xenophobia and condescension," and its "derogatory marketing towards the African American community," Dkt. No. 65 at 4–5; (2) Lashify has not acted equitably in seeking the preliminary injunction and the grant of a preliminary injunction would be "tantamount to a judicial sign of

4

approval for racist and xenophobic comments," *id.* at 5; (3) Lashify cannot show infringement by virtue of the legal doctrine of specification disclaimer, *id.* at 5–8; and (4) the Lashify Patents remain invalid, *id.* at 8–25.

## I.    The Standard of Review

The threshold and preliminary issue the Court must address is the standard to be applied to Defendants' motion.  Defendants argue that the Court has discretion to modify the injunction which it should exercise regardless of whether Defendants can point to any intervening change of controlling law, the availability of new evidence, or any clear error or manifest injustice.  Dkt. No. 79 at 2.  For its part, Plaintiff argues that Defendants' motion constitutes an impermissible third bite at the apple which must be supported by a "significant change in facts or law."  Dkt. No. 75 at 1–2 (quoting *Lawsky v. Condor Cap. Corp.*, 2014 WL 3858496, at *5 (S.D.N.Y. Aug. 1, 2014)).

The appropriate standard to be applied to a motion to vacate or dissolve a preliminary injunction has spawned some recent confusion in the courts of this Circuit.  In a number of cases, District Courts in this Circuit have held that a party moving to modify a preliminary injunction must show that such modification is justified by a "significant change in facts or law." *Lawsky*, 2014 WL 3858496, at *5 (citations omitted); *see also SEC v. Xia,* 2024 WL 3447849, at *10 (E.D.N.Y. July 9, 2024); *SEC v. CKB168 Holdings, Ltd.*, 2017 WL 4465726, at *4 (E.D.N.Y. June 20, 2017); *Ideavillage Prods. Corp. v. Bling Boutique Store*, 2017 WL 1435748, at *3 (S.D.N.Y. Apr. 21, 2017).[3]  In *Greater Chautauqua Fed. Credit Union v. Quattrone*, my colleague Judge Mary Kay Vysckocil took issue with those rulings and held that no change of circumstances is necessary to support a motion to modify a preliminary injunction.  2023 WL

---

[3] This Court too adopted that standard in its earlier order in this case.  Dkt. No. 58 at 5.

6037949, at *3 (S.D.N.Y. Sept. 15, 2023), *vacated on other grounds*, 2025 WL 2771567 (S.D.N.Y. Sept. 26, 2025). In her view, regardless of whether there was a significant change in circumstances, the only question the Court need address is "whether the current injunction is 'subject to adaption as events [ ] shape the need.'" *Id.* at *4 (quoting *Sierra Club v. Army Corp. of Engineers*, 732 F.2d 253, 256 (2d Cir. 1984)).

The question, as all courts seem to acknowledge, is how to interpret the Second Circuit's decision in *Sierra Club*. In that case, a defendant, the New York State Department of Transportation, moved to modify a preliminary injunction that halted work on the Westway project, the proposed super highway on the West Side of Manhattan, while permitting the State to continue certain non-construction work on the project for a set period of time. 732 F.2d at 256. Through modification, the State sought to extend this period of time to allow for preliminary design and engineering work to continue. *Id.* The district court denied the motion on the grounds that there was no "significant change in circumstances"; the plaintiff supported that decision on appeal on the grounds that modification could be granted only "in unusual circumstances." *Id.* at 257. The Second Circuit rejected that argument and agreed with the State that an injunction "is subject to modification when necessary to preserve the *status quo*." *Id.* In so doing, the Circuit drew a distinction between motions to modify a permanent injunction which are made under Federal Rule of Civil Procedure 60(b)(5) and, under that rule, may be granted "only where conditions have changed as to make sure relief equitable, *i.e.*, a significant change in law or facts," and a preliminary injunction where "a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Id.* at 256. The court stated: "An injunction is an ambulatory remedy that marches along according to the nature of the proceeding. It is executory and subject to adaption as events may shape the need,

6

except where rights are fully accrued or facts are so nearly permanent as to be substantially impervious to change." *Id.*

Drawing on the Circuit's language that no change in law or facts is necessary and that the district court has the same discretion on a motion to modify a preliminary injunction as it has on the motion for such an injunction in the first place, Defendants argue that they need not identify any change in law or facts for the Court to modify or dissolve the preliminary injunction in this case. They seem to assert that regardless of whether there exist any new facts or law since the Court issued the injunction, the Court should dissolve the injunction if it is no longer provident. Dkt. No. 79 at 2–3. Plaintiff takes the opposite view and argues, in essence, that Defendants are not entitled to a redo. Dkt. No. 75 at 1.

*Sierra Club* is best understood in context and from its facts. The Second Circuit, like other Circuits, has drawn a distinction between a motion to dissolve or modify a preliminary injunction and a motion for reconsideration of a preliminary injunction. *See New Falls Corp. v. Soni Holdings, LLC*, 2022 WL 2720517, at *1–2 (2d Cir. July 14, 2022) (distinguishing between motion for reconsideration and motion for modification of preliminary injunction). That distinction stems from the language of 28 U.S.C. § 1292(a)(1) which provides that orders granting or denying preliminary injunctions are immediately appealable notwithstanding their interlocutory nature as are orders, *inter alia*, "refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). Under the Federal Rules of Appellate Procedure, an appeal must be filed within 30 days of entry of the order appealed from, Fed. R. App. P. 4(a)(1)(A), unless a timely motion has been made under Federal Rule of Civil Procedure 59, Fed. R. App. P. 4(a)(4)(A)(iv). *See Lichtenberg v. Besicorp Grp. Inc.*, 204 F.3d 397, 400–01 (2d Cir. 2000). A party complaining that an injunction was improperly issued must appeal within thirty days of entry of

the preliminary injunction.  A party complaining that an injunction should have been modified or dissolved may appeal within thirty days of an order denying that motion.  But a party who is subject to a preliminary injunction may not extend the time limit for an appeal by filing a "'Motion to Modify Preliminary Injunction' [that] is merely an untimely Rule 59(e) motion for reconsideration disguised as a motion to modify."  *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993); *see Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 873 F.2d 647, 648 (2d Cir. 1989) ("An appeal from an order denying a successive motion for a preliminary injunction, where the motion is simply the same as the earlier motion, is untimely under Fed. R. App. P. 4(a)(1) unless the notice of appeal was filed within thirty days of the original denial.  The successive motion is viewed as a means merely to extend the thirty-day period for appeal").  In that instance, the time to appeal will begin to run from the entry of the preliminary injunction; if an untimely motion for reconsideration is disguised as a motion to modify, the Circuit disregards the motion and dismisses the appeal as untimely.

The Circuit has drawn this careful distinction in order to prevent the losing party on a motion for a preliminary injunction from indefinitely extending the time for appeal under the guise of filing a motion for modification.  A motion to modify or dissolve does not ask the question whether the injunction should have been granted in the first place.  It asks whether based on "events which occurred subsequent to the entrance of the order," *Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 623 (S.D.N.Y. 1977), the injunction should be modified or dissolved to achieve its original purpose or to avoid manifest injustice.  That is what is meant by the notion that an injunction is an "ambulatory remedy" that walks along with the case as it develops and is adaptable to meet changed circumstances.  *Sierra Club*, 737 F.2d at 256.  Facts change in a litigation and injunctions must sometimes be modified to meet those

changed facts.  *See, e.g., Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 143 (2d Cir. 2005) (injunction modified in trademark cases when new packaging developed after original injunction was likely to confuse plaintiff's customers).  "'The test of [the district court's] discretion [on a motion to modify] is measured by whether the requested modification effectuates or thwarts the purpose behind the injunction.'"  *New Falls Corp.*, 2022 WL 2720517, at *2 (quoting *Sierra Club*, 732 F.2d at 257).

By contrast, a motion that asks the Court whether the injunction should have been granted in the first place based on facts as they existed at the time the injunction was entered is properly considered a motion for reconsideration.  It is to be brought under Rule 59(e) and judged by the criteria applicable under that Rule.  Fed. R. Civ. P. 59.  Regardless how the motion is captioned, if the thrust of the motion is that the injunction never should have been entered, it would be considered by the Court of Appeals as a motion for reconsideration and thus is properly viewed by the District Court as a motion for reconsideration.

The distinction is critical.  "[T]he Court's necessary power to correct itself [] does not mean that findings made on a preliminary injunction motion are subject to constant re-examination at all times prior to trial."  *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 559 (S.D.N.Y. 2006), *aff'd*, 246 F. App'x 73 (2d Cir. 2007) (summary order).  "That would be a path to chaos."  *Id.*  As Judge Kaplan put it, framing the identical analysis in the language of law of the case:

> "[T]he fact that a court may revise a prior order does not give a litigant the right to require that it do so, particularly where the litigation seeks revision in light of materials that should have been submitted earlier."  The Court has discretion to revisit earlier rulings "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  In order to justify re-examination of an interlocutory finding or ruling, a litigant "ordinarily must demonstrate an

9

> intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."

*Id.* at 559–60 (first quoting *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 349–350 (S.D.N.Y. 2004), then quoting *Official Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)); *see also Weight Watchers*, 423 F.3d at 143 (stating that findings made by court on motion for a preliminary injunction were law of the case); *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 96 (2d Cir. 2024) (affirming "the district court's refusal to dissolve its preliminary injunction based on the law of the case"); *Beyond Blond Prods., LLC v. Heldman*, 2021 WL 4860376, at *7 (C.D. Cal. Aug. 13, 2021) (declining to reconsider findings from order denying preliminary injunction in the absence of new evidence).

*Sierra Club* is consistent with this analysis. The question presented there was not whether an injunction was properly entered in the first place. In April and July 1982, the district court had enjoined most of the construction work on the Westway Project as well as applications by the State for federal funding. 732 F.2d at 255. The State did not challenge that injunction. Rather, the State's application concerned what the Second Circuit characterized as "a skirmish along the way to th[e] ultimate decision" in the case—whether Westway would in fact be built. *Id.* The district court had allowed the State to continue to apply to the Federal Highway Administration to fund certain activities with the avowed intent that the project would be able to go forward at a later time. *Id.* at 255–56. However, as a result of the passage of time and of a timetable in that earlier order, the State was at risk that the planning and design work that would have been necessary for the project to go forward would not occur. *Id.* at 256. If the court had not extended the time period within which the State could apply for funding, the project would have been "stopped dead in its tracks." *Id.* What was intended and entered as a preliminary injunction pending a trial on the merits would have in practice been transformed into a

"permanent edict," contrary to the district court's original intent. *Id.* at 257. It was in that circumstance where, as the Second Circuit observed, the district judge "clearly did not intend by his orders to halt Westway permanently," *id.*, that the Circuit Court held that the district court "need only have applied the same discretion as it had originally," "measured by whether the requested modification effectuate[d] or thwart[ed] the purpose behind the injunction," *id.* at 257. New facts called into question whether the injunction as drafted needed to be modified to achieve its original intent.

*Greater Chautauqua* is consistent with this analysis too. Plaintiffs in *Greater Chautauqua* brought suit to challenge the enactment of a New York statute that reduced the post-judgment interest rate both retroactively and prospectively, and the court issued a preliminary injunction that enjoined the retroactive application of the statute state-wide. 2023 WL 6037949 at *1. The New York Attorney General later moved to modify the preliminary injunction to limit its scope to the three named plaintiffs in the case. *Id.* at *2. The court granted the requested modification, noting that "this proceeding has continued 'march[ing] along,' and . . . the Court now must consider whether the current injunction is 'subject to adaption as events [] shape the need'" *Id.* at *4 (quoting *Sierra Club*, 737 F.2d at 256). The requested modification aligned with developments in the case: plaintiffs clarified that they raised an "as-applied" constitutional challenge, rather than a broadly applicable facial challenge, and informed the court that class certification would not be necessary. *Id.* at *4–5. As the injunction no longer fit the contours of the case, the court modified it.

## II.    The Merits

Though styled a motion to vacate the preliminary injunction, Dkt. Nos. 64–65, Defendants' motion is really a belated motion for reconsideration or "to alter or amend" a judgment. Defendants do not argue that new facts have arisen that require the Court to modify

11

the preliminary relief to meet the changed circumstances.  They ask the Court to consider a question it has already considered and argue that facts that existed at the time the Court issued the preliminary injunction, but that were not presented to the Court, should cause the Court to vacate the injunction.  Defendants assert that the Court improperly found irreparable harm based on a "near identical copy-and-paste job that Lashify used to score another unwarranted preliminary injunction before another judge for this Court," Dkt. No. 65 at 1, but that such evidence of harm is undermined by facts that "[t]he Court was never told," *id.* at 2.  Defendants also argue that the accused products cannot infringe the Lashify Patents and that the Lashify Patents remain invalid.  *Id.* at 8.

Defendants' motion thus is judged under the lens of Rule 59(e).  Defendants must identify an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.  *See Salamone v. Douglas Marine Corp.*, 111 F.4th 221, 232 (2d Cir. 2024); *Metzler Investment GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020).  "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (internal quotation marks omitted); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).  Rather, "the standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).[4]  More

---

[4] The standard is similar to that for a motion for reconsideration.  "[A] motion for reconsideration may not be used to advance new facts, issues, or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court."  *Nat'l Union Fire Lns. Co. v. Las Vegas Prof'l Football L.P.,* 409 F. App'x 401, 403 (2d Cir. 2010) (summary order) (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y.

specifically, the Second Circuit has long and repeatedly "disapproved the practice of 'trying to relitigate on a fuller record preliminary injunction issues already decided.'" *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1207 (2d Cir. 1970) (Friendly, J.) (quoting *American Optical Co. v. Rayex Corp.*, 394 F.2d 155, 155 (2d. Cir. 1968)).  "Upon a request to revisit a preliminary injunction order, a Court should typically consider 'only truly new evidence.'" *Broker Genius, Inc. v. Seat Scouts LLC*, 2018 WL 11222928, at *2 (S.D.N.Y Aug. 3, 2018) (quoting *Semmes Motors*, 429 F.2d at 1207); *see JLM Couture, Inc. v. Gutman*, 2021 WL 2227205, at *5 (S.D.N.Y. June 2, 2021) (noting standard requiring "new evidence" for a motion for reconsideration of a preliminary injunction).  "'To permit a party to withhold its objections to a preliminary injunction until such time as it can present the strongest possible case and allow it then to obtain a dissolution of the injunction would be judicially unwise.'" *Broker Genius,* 2018 WL 11222928, at *2 (quoting *Huk-A-Poo Sportswear*, 74 F.R.D. at 624).  Defendants' motion fails that test.

Defendants do not purport to identify an intervening change in controlling law. Defendants also do not identify newly-available evidence that would alter the outcome of the Preliminary Injunction.  To constitute newly available evidence, "the evidence must be 'truly newly discovered or could not have been found by due diligence.'" *Ayala v. Saw Mill Lofts, LLC*, 2023 WL 5835585, at *3 (S.D.N.Y. Aug. 16, 2023) (quoting *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983)).  "A motion to reconsider [pursuant to Rule 59] is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 396 (S.D.N.Y. 2016) (quoting *Muyet v. United States*,

2001)).

2009 WL 2568430, at \*3 (S.D.N.Y. Aug. 19, 2009)).  Evidence known to the movant "but supplied to the Court for the first time on reconsideration . . . cannot constitute 'new evidence.'" *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 1088020, at \*2 (S.D.N.Y. Feb. 12, 2018).  A party fails to exercise due diligence in discovering evidence where the party could have requested an extension of time for discovery but failed to do so, *see, e.g., NEM Re Receivables*, 187 F. Supp. 3d at 397 (reconsideration not warranted where party did not submit evidence due to discovery delays but failed to request an extension of the discovery deadline or otherwise raise the issue with the court), or failed to timely begin searching for or requesting relevant records, *see, e.g., In re Bahre*, 28 B.R. 609, 611 (Bankr. D. Conn. 1983).  Where a movant identifies truly new evidence, "to justify reconsideration, the evidence must be 'of such importance that it probably would have changed the outcome' of the prior ruling." *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 341 (S.D.N.Y. 2012) (quoting *Vincent v. Money Store*, 2011 WL 4501325, at \*9 (S.D.N.Y. Sept. 29, 2011)), *as amended* (Sept. 19, 2012).

Defendants base their argument for vacatur on a marketing piece posted by Lashify in April 2024 and taken down within a day, Dkt. No. 65 at 2; Dkt. No. 75 at 7, Dkt. No. 76 ("Lotti Opp. Decl.") ¶¶ 4–6; testimonials from uCoolMe customers claiming that Defendants' lashes are superior to those of Plaintiff, Dkt. No. 65 at 4; an email from Lashify's counsel, *id.* at 11–12; and an expert declaration regarding prior art that Defendants claim invalidates the Lashify Patents, *id.* at 12–24.  Except for the email from Lashify's counsel, each piece of evidence predates the Court's Preliminary Injunction and could have been discovered with due diligence.  In any event, none of the evidence would have changed the outcome of the Preliminary Injunction.

14

The marketing piece at issue depicts a woman whose face is split by a white line.  To the left of the white line is text that states "Meet Shannon" while to the right of the white line is text that states "Meet ShaNayNay."  *Id.* at 2.  Defendants claim that the marketing piece is racist, asserting that ShaNayNay is "an invented name for a stereotypical 'ghetto' Black woman." *id.*, and that the piece demonstrates that the loss of sales upon which the Court based, in part, its conclusion of irreparable harm was not caused by Defendants' conduct but was a self-inflicted harm, *id.* at 2–3.  But the marketing piece is not truly new evidence.  Sahara Lotti, CEO of Lashify, originally posted the image on Instagram on April 14, 2024, over a year prior to the filing of this case, and removed the post "[a]fter being informed of the racist implications."  Lotti Opp. Decl. ¶¶ 4–6.  Defendants claim that they did not have this information sooner because Lashify "scrubbed" evidence of the campaign.  Dkt. No. 65 at 1 n.1.  But Defendants offer no evidence to support that conclusory assertion, which is implausible on its face.  First, if the post were truly scrubbed from existence within the same day it was posted, Defendants' claim that it caused continuing harm to Lashify is extraordinary.  Second, the evidence submitted by Defendants themselves demonstrates that the post was accessible.  The post resurfaced on TikTok in June 2025 and Plaintiff posted an apology video on TikTok on June 26, 2025, just two days after the Court issued the Preliminary Injunction.  Dkt. No. 76 ¶ 7.  It was posted on TikTok on June 26, 2025 by one of Defendants' brand influencers.  *See* Dkt. No. 75 at 7 (screenshot of post reflecting it being posted on June 26, 2025).  Defendants have presented no evidence why if the influencer was able to obtain the post and repost it by June 26, 2025, in plain response to the injunction, Defendants themselves could not have conducted an investigation to locate the post before that date.

Indeed, there is every reason to believe that the influencer who posted about the Lashify campaign on June 26, 2025 had been in touch with Defendants before that date. Beginning on June 19, 2025, the influencer (@maiathemc) posted 31 videos about Lashify, tagging ucoolmelashes (among others) and asking viewers to "let us know" about racist remarks. Dkt. No. 75 at 8 n.4. In a TikTok video dated June 23, 2025, one day before the preliminary injunction, @maiathemc shared that UCoolMe contacted her, stating "uCoolMe emailed me, and I'm sure they did email other influencers, to let us know that they are now Floatwing," and "this came directly from [Defendants'] rep in my email account." *Id.* at 8–9. And, on July 1, 2025, just one week after the preliminary injunction, the influencer wrote a post that "amidst this Lashify drama . . . ", she had:

> Been in correspondence with uCoolMe this whole entire time. And I do have to say that it's the first time that I've had such a bond with a brand as an influencer . . . UCoolMe also wants us to know that new drops are coming soon. UCoolMe will be dropping some new lash clusters and I am so excited to see what they are.

*Id.* at 7–8.

Defendants have filed a reply declaration of counsel attesting to his diligence with respect to an expert. Dkt. No. 80. The reply declaration is silent with respect to the date on which Defendants discovered the post, whether Defendants colluded with @maiathemc, and whether, if in fact Defendants did not discover the post until two days or some later date after the injunction, it could not have discovered it earlier.[5]

---

[5] Defendants also argue that Plaintiff's own inequitable conduct in using "derogatory marketing towards the African American community" and attacking members of the public "who explain that Chinese companies and individuals had invented the technology first" should deprive it of the right to invoke the equitable powers of the Court. Dkt. No. 65 at 4–5. "Application of the unclean-hands rule is appropriate 'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.'" *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 362 (S.D.N.Y. 2008) (quoting *Estate of Lennon v. Screen Creations, Ltd.,* 939 F. Supp. 287, 293 (S.D.N.Y.1996)); *accord Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 131 (S.D.N.Y.

The customer testimonials, in the form of TikTok comments, are also not new evidence. Many of these comments were available prior to the June 16, 2025 hearing on the preliminary injunction. Dkt. Nos. 39-1, 39-3 (showing undated comments and comments that are dated prior to June 16, 2025). Others are in response to a TikTok that was posted on approximately June 15, 2025. Dkt. No. 39-3. Counsel submitted them to the Court on June 22, 2025. Dkt. Nos. 39-1– 39-3. There is no explanation why these or similar testimonials could not have been submitted earlier; to the extent that a handful of them were not available prior to June 16, 2025, they are entirely immaterial. Defendants submitted a post from June 9, 2025 stating "Ucoolme lashes are superior" and comments from June 10, 2025 noting "ucoolme lashes are literally the best lashes I've ever tried." Dkt. No. 39-1 at 2–3. Undated comments within the exhibit state "I actually used to use lashify and I like ucoolme lashes better" and "ucoolme got one of the best pricing and lash varieties." *Id.* at 4. There is no basis to conclude that any of these posts were unavailable. The comments posted after the June 16, 2025 hearing are of the same ilk and are merely cumulative: "I have been a former Lashify user and ucoolme is honestly top tier," Dkt. No. 39-3 at 9; "ALSO as someone who has dished out the money to pay for lashify ucoolme is GENUINELY BETTER," *id.*; "Lashify is overpriced and it barely stayed on for a day for me, ucoolme are my fav," *id.* at 16. They thus do not provide a basis for vacatur of the injunction. *See Banco Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc.*, 2007 WL 2493684, at *2 (S.D.N.Y. 2007) ("newly discovered evidence [cannot be] merely cumulative . . .

---

2023). Defendants do not explain why Plaintiff's arguably offensive language towards other ethnic or racial groups operated to Defendants' detriment or why exactly Plaintiff's alleged "racism," Dkt. No. 65 at 5, should give Defendants license to continue infringing Plaintiff's patents.

of evidence already offered." (quoting *Fidelity Partners, Inc. v. First Trust Co. of New York*, 58 F. Supp. 2d 55, 59 (S.D.N.Y. 1999)).

In any event, the Court's finding of irreparable harm was not based on the quality of the infringing products, but rather Lashify's evidence of "potential price erosion, potential damage to reputation, and loss of business opportunities." Dkt. No. 56 at 11.  Lashify's CEO affirmed that the infringement "has resulted in lost profits to Lashify and has damaged Lashify's reputation as an innovator." Dkt. No. 19 ¶ 29.  That some commenters prefer Defendants' allegedly infringing products to Plaintiff's patented products does not undermine the Court's finding of irreparable harm and would not change the Court's analysis.  *See RMH Tech LLC v. PMC Industries, Inc.*, 352 F. Supp. 3d 164, 201 (D. Conn. 2018) (finding reputational harm where defendant put an infringing product on the market and released a comparison video suggesting that the infringing product is superior); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1208 (Fed. Cir. 2017) (finding persisting reputational harm where customer review stated that the infringing product was better than the patented product).

The prior art evidence offered by Defendants is almost by definition not newly-discovered evidence.  Defendants cite to an article, blog post, and video, as well as five prior patents that it argues anticipated claims 1, 3, 5, 8, and 15 of the '020 patent: U.S. Patent No. 0023062 ("3D-Beauty"), Patent M476490 ("Li"), U.S. Patent No. 0061341 ("Choe 2"), U.S. Patent No. 0305020 ("Byrne"), and U.S. Patent No. 3,833,007 ("Jacobs").  *Id.* at 14.  Defendants argue that Li, Choe 2, Byrne, and Jacobs also anticipate claims 1, 7–8, 15, and 17–18 of the '290 patent, and that the prior art renders the Lashify Utility Patents invalid as obvious.  *Id.* at 20–22. Defendants already cited the Choe 2 patent in their briefing to the Court in opposition to the Preliminary Injunction.  Dkt. No. 27 at 8.  The other pieces of prior art were equally available to

18

Defendants at the time of the Preliminary Injunction.  Defendants' counsel attests that as soon as he was engaged on May 30, 2025, he began a review of the prior art referenced in the patents but "[i]t became readily apparent that I did not have enough time to review the hundreds of prior art references that were cited by Plaintiff to the United States Patent and Trademark Office . . . while substantively analyzing and responding to Plaintiff's motion for a preliminary injunction."  Dkt. No. 80 ¶ 4.  Contrary to Defendants' argument, Dkt. No. 65 at 13, each of the patents that Defendants rely on are listed as references in the publicly-available Lashify Utility Patents, Dkt. No. 71-2 at 2, 4–5; Dkt. No. 71-3 at 7.  If the counsel retained by Defendants did not have the time himself to review the prior art, there is no reason offered why Defendants could not have obtained additional assistance or asked for an adjournment of the hearing.  The claim that they reviewed some prior art but not all of the available prior art does not entitle them to a redo.  *See Semmes Motors*, 429 F.2d at 1204–05 (if Defendant sought to present live testimony in contesting the temporary injunction and did not have sufficient time to do so, "conditioning such presentation on an appropriate stipulation for extension of the restraining order would have solved the problem"); *see id.* ("A party who chooses to gamble on that procedure [proceeding without testimony] cannot be heard to complain of it when the decision is adverse.").

Likewise, Defendants' offered expert declaration does not constitute new evidence.  The fact that the declaration itself did not exist at the time of the Preliminary Injunction of course does not make it "new" evidence, especially where the declaration does not cover any material that would have been unavailable to counsel prior to the Preliminary Injunction.  *See Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 172 (S.D.N.Y. 2011) (finding that expert report "does not qualify as newly discovered evidence" where attorney offers no explanation for why due diligence would not include obtaining an expert report); *see also In re Arida, LLC*, 2021 WL

19

2226852, at *3 n.5 (S.D.N.Y. June 2, 2021) ("A new expert report or declaration . . . does not amount to newly discovered evidence."); *McDowell v. Eli Lilly & Co.*, 2015 WL 845720, at *3 (S.D.N.Y. Feb. 26, 2015) ("The report by a retained expert does not constitute 'new evidence' meeting the high standard warranting reconsideration."); *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 934–35 (8th Cir. 2006) (expert report was "merely a newly created opinion based on facts known or accessible by Mallinckrodt at the time" and did not constitute new evidence under Rule 59).  A party cannot manufacture "new evidence" by creating a new expert report.  Defendants' counsel admits that it was not until after the Court issued the preliminary injunction that he "began calling multiple different individuals in the hope of finding the right expert for Defendants in this case."  Dkt. No. 80 ¶ 5.  He does not explain why, if he contemplated using an expert for the preliminary injunction, he waited until after the Court entered its order.  Were the Court to adopt Defendants' argument that a previously unprepared expert declaration is "new evidence," there would never be finality to a preliminary injunction. The party on the losing end of the motion could perpetually seek to relitigate it by creating new expert reports until it found something that would stick.  Defendants will be able to use an expert at the trial on the merits in this case; they have not justified the Court considering the expert on a motion for reconsideration.

Finally, Defendants offer an email exchange with Lashify's counsel as new evidence. Dkt. No. 65 at 11.  On July 10, 2025, Defendants' counsel emailed counsel for Lashify to inquire whether Lashify would agree that Defendants' products would no longer be infringing if Defendants "instruct[ed] their customers to attach their false lash products only above their natural lashes."  Dkt. No. 67-6 at 2.[6]  Lashify responded on July 16, 2025 that if uCoolMe was

---

[6] Citations to this docket entry use ECF pagination.

planning to redesign its lashes, Plaintiff would need to know what was being changed, and that if

uCoolMe was merely "changing the wording in the instructions . . . [that] does not avoid

infringement" and would still violate the injunction. *Id.* at 1.  Considered as a basis for

reconsideration, the evidence plainly fails.  If Defendants contemplated a concession to Plaintiff

prior to the injunction, there is no reason why they could not have offered that concession earlier.

An email from counsel with respect to facts that pre-existed the preliminary injunction hearing

does not constitute new evidence even if the email post-dates the injunction by a few weeks.

And considered as a basis for modification, it also fails.  As counsel noted in the email, the

claims asserted in the Utility Patents are not method claims. *Id.*  A change in instructions thus

would not protect Defendants if Defendants are, in fact, practicing the claimed invention.

Finally, Defendants identify no clear error or manifest injustice.  "The standard . . . is a

strict one, as manifest injustice is defined as an error committed by the trial court that is direct,

obvious, and observable." *Hines v. BMG Rights Mgmt. (US) LLC*, 711 F. Supp. 3d 200, 205

(S.D.N.Y. 2024) (internal quotation marks, alteration, and citation omitted); *see Sigmon v.

Goldman Sachs Mort. Co.*, 2019 WL 970943, at *4 (S.D.N.Y. Feb. 28, 2019) (party seeking

reconsideration for manifest injustice bears a "high burden.").  This standard "provides relief

only in the proverbial 'rare case,'" and there is no manifest injustice "where the movant's

arguments for relief 'were available to the [party] below and [the party] proffer[s] no reason for

[its] failure to raise the arguments." *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F.

App'x 40, 44 (2d Cir. 2014) (summary order) (first quoting *United States v. Rigas*, 583 F.3d 108,

123 (2d Cir. 2009), then quoting *In re Johns-Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014)).

"Courts ordinarily have not defined precisely what constitutes clearly erroneous or manifest

injustice for reconsideration purposes.  At least one court has held though that reconsideration is

not warranted unless the prior decision is 'dead wrong.'" *OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*, 2007 WL 2900225, at *1 n.1 (S.D.N.Y. Oct. 4, 2007) (quoting *Parts & Electric Motors, Inc. v. Sterling Electric. Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

The Court's decision to issue a preliminary injunction was carefully considered. The Court concluded that Plaintiff had demonstrated that Defendants' infringing activities, if permitted to continue, would cause Plaintiff irreparable harm because Defendants are direct competitors of Plaintiff in the same market, have amassed a substantial social media following, and sell their products at a substantially lower price point. Dkt. No. 56 at 11:5–21. The Court found that Plaintiff presented evidence of potential price erosion, potential damage to reputation, and loss of business opportunities. *Id.* at 11:10–14. The Court relied on the unrebutted testimony of Lotti. *Id.* at 12:13–14. Defendants have pointed to no error in this analysis and instead rely on the evidence regarding Lashify's marketing and online presence to argue that the Court's finding of irreparable harm was in error. Dkt. No. 65 at 1–4. The Court's decision, however, did not turn on whether at any time in the past Plaintiff had a miscue in its marketing strategy. Evidence that the April 2024 marketing piece was poorly designed, or even that it had racist tones, would not undermine the Court's conclusion of irreparable harm. Nor have Defendants adequately shown that one advertising campaign, which was posted over a year prior to the filing of this lawsuit, generated such a negative effect on Lashify's business so as to undermine all of the factors the Court found as demonstrating irreparable harm. Defendants' proffered evidence that some TikTok commenters prefer Defendants' products or dislike Lashify's online presence is insufficient to meet the high burden of manifest injustice.

Defendants have also failed to demonstrate clear error or manifest injustice in the Court's finding that Defendants' prior art references "fail to raise a substantial question regarding the

22

validity of the patent." Dkt. No. 56 at 9:3–4. The Court noted that "where the prior art is before the examiner during prosecution, the burden of proving invalidity is especially difficult" and concluded that "Defendants have not shown . . . that the prior art references disclosed all the elements of the claim within the four corners of the document." Dkt. No. 56 at 8:25–9:2, 9:25–10:3 (internal quotation marks and citation omitted). With respect to obviousness, the Court found that "Defendants present 'no evidence of what [a] highly skilled artisan would be motivated to do beyond conclusory attorney argument.'" Dkt. No. 56 at 10:5–7 (quoting *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1403 (Fed. Cir. 2022)). Defendants reiterate their argument that there is a "substantial question" of the invalidity of the Lashify Patents. Dkt. No. 65 at 25. But that was the question on the motion for a preliminary injunction and it is not the question on this motion. Defendants have not alleged that the Court's analysis constitutes clear error or error that is otherwise "direct, obvious, or observable." *Hines*, 711 F. Supp. 3d at 205. Defendants instead reiterate the standards for invalidity to again argue that prior art renders the Lashify Utility Patents invalid as obvious and anticipated. Dkt. No. 65 at 9. Upon review of the prior art submitted by Defendants, it is not readily apparent or clear that there is a piece of prior art that anticipates each element of the contested claims of the Lashify Utility Patents. *See Guangdong Alison Hi-Tech v. Int'l Trade Commission*, 936 F.3d 1353, 1363–64 (Fed. Cir. 2017) ("A patent claim is invalid as anticipated only if each and every element of the claim is expressly or inherently disclosed in a single prior art reference."). If the Court got it wrong at the preliminary injunction stage, Defendants can establish at the trial stage that the injunction should never have been issued and recover on the bond. See *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1055 (2d Cir. 1990). At this point, it is enough for the Court to find that its invalidity analysis does not constitute clear error.

Defendants also argue, for the first time, that the Court should have found that the accused products cannot infringe the Lashify Utility Patents because the patents exclude from their scope lash extensions that employ a "base" that is a string or other separate structure. Dkt. No. 65 at 6. Defendants do not base this argument on an intervening change in controlling law or on new evidence, but rather on the long-established doctrine of specification disclaimer. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (describing doctrine). There can be no clear error in not considering an argument that Defendants could have raised earlier but failed to do so. *See Gordon v. Ramot-at-Tel-Aviv-University*, 2014 WL 13113772, at *3 (S.D.N.Y. June 5, 2014) ("[I]t is not appropriate on a Rule 59(e) motion to raise new arguments or present new evidence that could have been raised or presented before" (citing *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001))); *In re Hoti Enterprises, L.P.*, 2012 WL 6720378, at *3 (S.D.N.Y. Dec. 27, 2012) ("It is plainly not an abuse of discretion for a court not to consider an argument not made to it."). As important, the Court has already rejected Defendants' specification disclaimer argument in the course of claim construction. Dkt. No. 113. Accordingly, at this stage, Defendants' argument that the Preliminary Injunction must be vacated because its products cannot infringe the Lashify Utility Patents under the doctrine of specification disclaimer must fail.

**CONCLUSION**

The motion to vacate the preliminary injunction is DENIED. [7]

The Clerk of Court is respectfully directed to close Dkt. No. 64.

SO ORDERED.

Dated: January 15, 2026
     New York, New York

                          LEWIS J. LIMAN
                    United States District Judge

---

[7] Plaintiff also requests attorneys' fees. Dkt. No. 75 at 2. Plaintiff cites no authority for the proposition that it is entitled to attorneys' fees and its request is therefore denied. *Newsom-Lang v. Warren Intern., Inc.*, 249 F. Supp. 2d 292, 303 (S.D.N.Y. 2003) (denying request for attorneys' fees where no legal basis was cited in support of request).