UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

:

LASHIFY, INC.,                                              :

:

Plaintiff,                  :

:                           25-cv-4183 (LJL)

-v-                                              :

:                           MEMORANDUM AND
                                                           :                           ORDER
QINGDAO NETWORK TECHNOLOGY CO., LTD.       :
a/k/a QINGDAO FOLLOW THE TREND              :
NETWORK TECHNOLOGY CO., LTD. a/k/a          :
QINGDAO MARS CULTURE MEDIA CO., LTD         :
d/b/a UCOOLME and VIVICUTE LIMITED,         :

:

Defendants.                 :

:

--------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants Qingdao Network Technology Co., Ltd., a/k/a Qingdao Follow the Trend

Network Technology Co., Ltd., a/k/a Qingdao Mars Culture Media Co., Ltd. d/b/a UCoolMe

("QNT") and Vivicute Limited ("Vivicute," and collectively with QNT, "Defendants") move,

pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, for reconsideration

of portions of the Court's order entered December 22, 2025 (the "Order"), construing the patent

claims of Plaintiff Lashify, Inc. ("Plaintiff" or "Lashify").  Dkt. No. 115.

In the Order, the Court construed certain claim limitations of Plaintiff's utility patents:

U.S. Patent No. 11,253,020 (the "020 Patent") and U.S. Patent No. 12,171,290 (the "'290

Patent," and with the '020 Patent, the "Utility Patents").  Dkt. No. 113.  The Court also construed

Lashify's design patents: D1,009,374 (the "D'374 Patent") and D989,333 (the "D'333 Patent,"

and with the D'374 Patent, the "Design Patents," and collectively with the Utility Patents, the

"Lashify Patents").  *Id.*  The Lashify Patents concern an artificial eyelash extension system

including multiple lash extensions that are designed to be attached by the user to an underside of

the user's natural eyelashes.  As relevant here, the Utility Patents both claim a system comprised of a plurality of lash extensions "designed to attach . . . at the underside of natural lashes" (Claim 1 of the '020 Patent) or "designed to attach to an underside of natural lashes" (Claim 1 of the '290 Patent).  In addition, Claim 1 of the '020 Patent recites an artificial lash extension system that includes "a base from which the at least two artificial hairs of each of the plurality of clusters protrude," Dkt. No. 71-2 at 9:15–16, and Claim 1 of the '290 patent recites that the artificial lash extension system comprises "a plurality of lash extensions, each comprising: a knotless base," Dkt. No. 71-3 at 9:25–27.  The Court concluded that the language "designed to" should be given its plain and ordinary meaning as understood by a person of ordinary skill in the art ("POSITA") and rejected Defendants' argument that it should be construed as "capable of."  Dkt. No. 113 at 7–14; *Lashify, Inc. v. Qingdao Network Tech. Co., Ltd.*, 2025 WL 3707502, at \*4–7 (S.D.N.Y. Dec. 22, 2025).  The Court also rejected Defendants' argument that the terms "base" and "knotless base" should be construed to exclude "conventional lash extensions that use a string or other strip of material to connect the artificial hairs to one another."  *Lashify*, 2025 WL 3707502, at \*8.

Defendants argue that the Court should reconsider its construction of the terms "designed to attach" and "base" in the '020 Patent and "knotless base" in the '290 Patent.  Dkt. Nos. 120, 123.[1]  Defendants argue that the Court erred in failing to consider the file history of a related patent, U.S. Patent Application Serial No. 17/003,853 (the "'853 Application"), and that consideration of that history would have resulted in construction of "designed to" to mean

---

[1] The Court struck Defendants' memorandum of law in support of the motion for reconsideration as filed on January 5, 2026, for failure to comply with the word limits in this District's Local Civil Rule 6.3.  Dkt. No. 117.  As permitted by the Court, Defendants filed an amended memorandum of law in support of the motion for reconsideration on January 7, 2026.  Dkt. No. 120.

"capable of." Dkt. No. 120 at 1–4; Dkt, No. 123 at 4–5. Defendants also argue that the Court should have found specification disclaimer applicable to the "base" and "knotless base" claim terms. Dkt. No. 120 at 2, 4–9; Dkt. No. 123 at 5–7. Defendants argue that the Court should have construed "base" and "knotless base" "to mean something that does not use a string or a thread, i.e., a lash fusion." Dkt. No. 123 at 6.[2]

"The standard for granting a motion for reconsideration is strict," and such motions are "generally denied 'unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *In re Bouka*, 654 F. Supp. 3d 283, 286 (S.D.N.Y. 2023) (first quoting *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 322 F.R.D. 442, 445 (S.D.N.Y. 2017); and then quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Rather, "[r]econsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly" and "should be granted only when the moving party 'identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Flynn v. Cable News Network, Inc.*, 621 F. Supp. 3d 432, 435 (S.D.N.Y. 2022) (first quoting *Ortega v. Mutt*, 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017); and then quoting *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2015)).

---

[2] In its amended memorandum of law in support of the motion for reconsideration, Defendants also argue that the Court erred in failing to limit the claim to bases that "have no quantifiable weight" and in failing to find that the inventor disavowed a claim over bases that have quantifiable weights. Dkt. No. 120 at 9–11. Defendants abandon that argument in their reply memorandum by failing to respond to Plaintiff's arguments in opposition. Dkt. No. 123.

The file history of the '853 Application is not new evidence and does not establish clear error or manifest injustice.  Accordingly, Defendants are not entitled to reconsideration of the Court's decision that "designed to" should be given its plain and ordinary meaning.

As the Court has previously explained, "new evidence" is that which is "truly newly discovered or could not have been found by due diligence." *Lashify, Inc. v. Qingdao Network Tech. Co.*, 2026 WL 112022, at *7 (S.D.N.Y. Jan. 15, 2026) (quoting *Ayala v. Saw Mill Lofts, LLC*, 2023 WL 5835585, at *3 (S.D.N.Y. Aug. 16, 2023)).  "A motion to reconsider [pursuant to Rule 59] is not [defendant's] opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." *Id.* (quoting *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 396 (S.D.N.Y. 2016)).  "Evidence known to the movant 'but supplied to the Court for the first time on reconsideration . . . cannot constitute 'new evidence.'" *Id.* (quoting *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 1088020, at *2 (S.D.N.Y. Feb. 12, 2018)).

The file history of the '853 Application is not new evidence.  The file history was referenced by Defendants in the November 10 claim construction hearing.  Dkt. No. 111 at 9–10.  The Court declined to consider the file history then for two reasons: (1) it was raised for the first time at oral argument; and (2) the actual file history of a patent that was not one of the patents-in-suit was not in evidence.  Dkt. No. 113 at 8 n.1, 24 n.3.  The Court may consider a patent's prosecution history "if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995); *see also Vitronics Corp. v. Concerpttronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("the court may also consider the prosecution history of the patent, if in evidence").  But the history of the '853 Application was not in evidence.  Defendants correctly note that the Court has the authority to take judicial notice of the file history even if raised for the

first time at oral argument.  *See* Dkt. No. 120 at 1 (citing, e.g., *Epitopix, LLC v. Zoetis Inc.*, 2025 WL 274795, at *7 (D.N.J. Jan. 23, 2025)).  However, Defendants point to no authority that the Court is required to take judicial notice where Defendants failed to ask the Court to do so and failed to point the Court to the relevant file history.[3]  Moreover, the Court has discretion to ignore arguments made for the first time at oral argument and consider them to be waived.  *See Wade Park Landing Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 368–69 (S.D.N.Y. 2022); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008).

Defendants' failure to raise the file history of the '853 Application, if it deemed that history to be important, was inexcusable.  The *Markman* hearing was two months after Plaintiff's opening claim construction memorandum was filed, Dkt. No. 71, and six weeks after Defendants' responsive claim construction memorandum was filed, Dkt. No. 81.  It was nearly four weeks after Plaintiff's reply claim construction memorandum.  Dkt. No. 85.[4]  Defendants do not claim that the '853 Application was unavailable to them at the time that they responded to Plaintiff's first claim construction statement.  They assert that it was proper to raise the '853 Application at argument because it was responsive to Plaintiff's claim construction reply brief arguments, to which the Court's scheduling order did not permit a response.  Dkt. No. 123 at 4. But the argument to which Defendants claim the file history is responsive was also made in Plaintiff's opening claim construction memorandum.  Dkt. No. 71 at 10–12.  Defendants also argue that the file history of the '853 Application is "by definition, 'new' evidence," because it

---

[3] Defendants still have not submitted the prosecution history.

[4] The Court scheduled the deadlines for claim construction in its Amended Case Management Plan and Order of July 2, 2025.  Dkt. No. 46.  The deadlines for claim construction were more generous than those proposed by Defendants.  *See* Dkt. No. 45 at 2 (requesting that the Court require Plaintiff to file its claim construction statement by August 4, 2025, with Defendants' responsive claim construction due August 18, 2025).

was not considered by the Court in the Order.  Dkt. No. 123 at 5.  By that argument, all evidence that a party fails to raise to the Court would by definition be new evidence.  Were the argument accepted, it would provide a recipe for every disappointed litigant to obtain a "re-do."

Moreover, the file history does not demonstrate any clear error or manifest injustice. Defendants argue that in the '853 Application, Lashify pursued a claim that was nearly identical to Claim 1 in the '020 Patent.  Dkt. No. 120 at 2.  According to the Examiner Interview Summary, as a way to overcome prior art, Lashify "clarified that [it was] seeking to require that the plurality of lash extensions [be] capable of being applied to the areas under the natural lash of the user." *Id.* at 3 (quoting Jan. 12, 2021 Examiner Interview Summary in U.S. Patent Application Serial No. 17/003,853).  Defendants assert that Lashify never disputed that representation but instead amended the claim to include the language "the base designed to at least attach to an underside of a natural lash." *Id.* (quoting Jan. 12, 2021 Amendment and Response to Office Action in U.S. Patent Application Serial No. 17/003,853 at 2).  The patent examiner subsequently rejected claims with the "designed to . . . attach" language on the basis that there was prior art teaching that lash extensions are capable of being attached to an underside of a natural lash. *Id.*  From that evidence, Defendants argue that Lashify and the United States Patent and Trademark Office ("USPTO") both understood "designed to" to mean "capable of," and that Lashify disavowed a different interpretation of the claim. *Id.*  Defendants stated that because the Utility Patents contain the same "designed to" language as in the related '853 Application claims, Lashify's disavowal of a broader construction of "designed to" in connection with the '853 Application must also apply to the same language in the Utility Patents. *Id.* at 3–4; *see* Dkt. No. 123 at 5 (arguing that the claims in the Utility Patents should have a broader meaning in claim construction because "Lashify and the USPTO underst[ood] those

terms to have a broader meaning in seeking allowance of related claims using the same language").

"The prosecution history of a related patent can be relevant if, for example, it addresses a limitation in common with the patent in suit." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1305 (Fed. Cir. 2001). However, "it is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims." *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 156 F.4th 1259, 1275 (Fed. Cir. 2025) (quoting *In-nova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1124 (Fed. Cir. 2004)). Although "[s]tatements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed[,] an applicant's silence regarding such statements does not preclude the applicant from taking a position contrary to the examiner's statements when the claim terms are construed during litigation." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005). "[U]nilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant." *McNeil-PPC, Inc. v. Perrigo Co.*, 443 F. Supp. 2d 492, 506 (S.D.N.Y. 2006) (quoting *Salazar*, 414 F.3d at 1347–48 ).

Defendants cite to no evidence that Lashify adopted the examiner's "capable of" language. The examiner's view that "designed to" is equivalent to "capable of" with respect to the '853 Application thus does not limit Plaintiff's claims in the Utility Patents. The Court is not bound by the examiner's construction of a claim which is not necessarily co-extensive with that which the Court should give the claim in connection with an allegation of patent infringement. *See DDR Holdings, LLC v. Priceline.com LLC*, 122 F.4th 911, (Fed. Cir. 2024) (the district court is not bound by the Patent Trial and Appeal Board's claim construction); *TDM Am., LLC v.*

*United States*, 100 Fed. Cl. 485, 492 (Fed. Cl. 2011) (noting that patent examiners and courts construe claims under distinct standards).  There is no clear error in, or manifest injustice as a result of, the Court's Order.

Defendants also argue that the Court clearly erred in not finding that Lashify disclaimed in the common specifications to the Utility Patents a base that uses a string or thread to connect artificial hairs to one another.  Dkt. No. 123 at 4–9.  The common specifications to the Utility Patents describe that one of the advantages of the claimed invention is that "multiple clusters can be heat sealed to one another," which embodiment provides advantages over conventional clusters that "use a string at the base to connect the artificial hairs to one another."  Dkt. No. 71-2 at 5:16–21.  At claim construction as now, Defendants argued that the specification thereby disavowed a claim to a base that uses a string or thread.  Dkt. No. 120 at 6–7 (motion for reconsideration); Dkt. No. 123 at 5–7 (reply brief in support of motion for reconsideration); Dkt. No. 81 at 5–7 (claim construction statement).

The Court rejected Defendants' argument.  It stated that "[t]he standard for disavowal of claim scope is . . . exacting" and "[d]isclaimer must be 'clear and unmistakable.'"  *Lashify*, 2025 WL 3707502, at *9 (quoting *Thorner v. Sony Compt. Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012)).  It concluded that Defendants had not established specification disclaimer. The Court relied, in part, on the fact that the specification contemplated an embodiment "where 'some or all of the artificial hairs within a cluster may be tied to a support thread'" to reach the conclusion that Defendants' proposed claim construction would exclude a contemplated embodiment.  *Id.* (quoting Dkt. No. 71-2 at 4:31–32).  The Court more fundamentally found that the specification's statement "that the claimed invention provides an advantage over

conventional clusters' use of string at the base does not clearly and unmistakably disavow any use of string to connect lashes to one another." *Id.* at *9.

Defendants have identified no clear error.  The language to which Defendants point does not clearly and unmistakably disavow the use of a string or a thread.  While the specification explains that in the claimed invention "multiple clusters can be heat sealed to one another," and describes the advantage of this embodiment over conventional clusters, it does not exclude the use of a string to connect the clusters.  Dkt. No. 71-2 at 5:15–21.  Nor can the single instance of arguable disparagement of the prior art be "reasonably . . . viewed as a disavowal." *Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513 (Fed. Cir. 2015) (quoting *Chi. Bd. Options Exch., Inc. v. Int'l Secs. Exch., LLC*, 677 F.3d 1361,1372 (Fed. Cir. 2012)).  Specification disclaimer must be "so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer," *id.*, and "must contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope," *IQRIS Techs. LLC v. Point Blank Enters., Inc.*, 130 F. 4th 998, 1004 (Fed. Cir. 2025).  Mere criticism of a feature, even in comparison to prior art, is not sufficient to find disclaimer.  *See Thorner*, 669 F.3d at 1366; *Epistar Corp. v. Int'l Trade Com'n*, 566 F.3d 1321, 1336 (Fed. Cir. 2009) ("A patentee's discussion of the shortcomings of certain techniques is not a disavowal of the use of those techniques in a manner consistent with the claimed invention."); *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1365–67 (Fed. Cir. 2004) (fact that specification "highlights the problems inherent in . . . run[ning] multiple user applications" does not demonstrate disclaimer of multi-user computers from the definition of user computers).  The specification's criticism of string at the base of a lash fusion is limited to its description of the advantages of a particular embodiment; the specification is not so "rife with remarks that disparage" the use of string at the

9

base as to constitute unmistakable disavowal.  *Openwave*, 808 F.3d at 514; *cf. Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1316 (Fed. Cir. 2006) (finding disclaimer where patent included "a detailed disclosure in the written description why metal fibers were preferable to carbon fibers").

Moreover, this is not an instance where the specification criticizes the disparaged feature as incompatible with a fundamental aspect of the invention.  *See Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.*, 752 Fed. App'x 1024, 1025, 1029 (Fed. Cir. 2018) (finding disclaimer where specification disparaged conventional method for drying drug films because "it produces films without content uniformity—a claim limitation and a key feature of the invention"); *Honeywell*, 452 F.3d at 1319–20 (finding that specification disavowed "carbon fibers" from claim's scope where the specification "informed its readers specifically why carbon fibers would not be suitable . . . in the claimed invention").  The shared specification notes two disadvantages of the use of string in conventional clusters: it "causes conventional clusters to have a quantifiable weight," Dkt. No. 71-2 at 5:26–29, and "causes the total height at the base of the cluster to exceed 0.3 mm," *id.* at 5:20–21.  Neither disadvantage goes toward a key feature of the claimed invention.  As this Court previously determined, a lash fusion of "no quantifiable weight" is not a limitation of the claimed invention.  *Lashify*, 2025 WL 3707502, at *11.  Further, both patents include dependent claims that describe as an embodiment "the artificial lash system of claim 1, wherein a thickness of the base [or, in the '290 patent, "knotless base"] is less than 0.3 millimeters."  Dkt. No. 71-2 at 10:37–39 (dependent Claim 19); Dkt. No. 71-3 at 10:4–5 (dependent Claim 13).  The further limitation in the dependent claims necessarily implies that a thickness of less than 0.3 millimeters is not otherwise a limitation of the claimed invention.  *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1361 (Fed. Cir. 2010) ("Under the doctrine

10

of claim differentiation, those dependent claims give rise to a presumption that the broader independent claims are not confined to [the] range [recited in the dependent claim].”); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (en banc) (stating in parenthetical that “an independent claim should be given broader scope than a dependent claim to avoid rendering the dependent claim redundant”).  The specification’s limited criticisms do not go toward fundamental aspects of the claimed invention or otherwise suggest that the claim scope excludes the use of string to connect lashes to one another.

The Court’s construction is further supported by dependent Claim 6 of the ‘290 patent, which recites “[t]he artificial lash extension system of claim 1, wherein the knotless base comprises a base string or fiber.”  Dkt. No. 9-2.  The term “base” is equivalent in the ‘020 patent and the ‘290 patent, and the patents share a common specification.  If the independent claim to the ‘290 patent encompasses a base that is comprised of string or fiber, and both patents claim a base, it is difficult for the Court to conclude that the shared specification unequivocally disavowed the use of string at the base.  *See Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016) (“construing the independent claim to exclude material covered by the dependent claim would be inconsistent”).  Such disavowal would contradict the ‘290 Patent’s claimed embodiment.  *See Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1379 (Fed. Cir. 2018) (inclusion of an embodiment in a dependent claim “belies any disavowal of [that] embodiment in the independent claim from which it depends”).

Defendants also complain that the Court ignored the evidence from their expert Jill Kindall.  Dkt. No. 120 at 8.  But that evidence was not unrebutted.  Plaintiff’s expert, Vivian Baker, testified that a POSITA “would have no trouble” understanding the term “base” and that

the term, when used with artificial lashes, "refers to the bottom part of the artificial lashes, the end product." Dkt. No. 70-4 ¶ 17. Defendants have demonstrated no clear error in the Court's construction.

## CONCLUSION

Defendants' motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to close Dkt. No. 115.

SO ORDERED.

Dated: February 11, 2026
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge